**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEHIGH VALLEY TOXICOLOGY, LLC doing business as LEHIGH VALLEY GENOMICS, LLC, Plaintiff, v. CONTINENTAL CASUALTY COMPANY/CNA, Defendant. | Civil No. 5:24-cv-06153-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                           August 29, 2025

## I.      OVERVIEW

Plaintiff Lehigh Valley Toxicology seeks a declaratory finding that its insurer, Defendant, Continental Casualty Company, is obligated to indemnify and defend Plaintiff in a pending state court action. Both parties filed motions for judgment on the pleadings. For the following reasons, Defendant's motion is granted, and Plaintiff's motion is denied.

## II.     FACTUAL BACKGROUND

### a.   The Insurance Policies

For the relevant time period, Plaintiff was insured by Defendant under two policies, the Commercial Package Insurance Policy ("Package Policy") and the Commercial Umbrella Insurance Policy ("Umbrella Policy"). Exs. 1, 2, ECF No. 12. The Businessowner's Liability Coverage Form provides that Defendant will be obligated to indemnify Plaintiff for damages caused by "bodily injury," "property damage," or "personal and advertising injury" to which the

Package Policy applies. Ex. 1, ECF No. 12 at 131. Such policy further provides that Defendant is obligated to defend the insured against any suit seeking those damages. Ex. 1, ECF No. 12, at 117.

"Personal and advertising injury," as defined in the Package Policy, means injury, including consequential 'bodily injury' arising out of one or more of several listed offenses, including "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Ex. 1, ECF No. 12 at 131. The Package Policy notably includes the following exclusions for personal and advertising injuries, which this Court will refer to as the "knowing publication exclusion":

> "Personal and Advertising Injury":
> (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
> (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Ex. 1, ECF No. 12 at 123. Additionally, the Package Policy excludes coverage for incidents resulting from the rendering or failure to render any professional service, referred to as the "professional services exclusion":

> j. Professional Services
> "Bodily injury," "property damage," "personal and advertising injury: caused by the rendering or failure to render any professional service. This includes:
> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
> (5) Any health or therapeutic service or treatment, advice or instruction;
> (9) Services in the practice of pharmacy
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury," involved the rendering or failure to render any professional service.

Ex. 1, ECF No. 12 at 122. The Umbrella Policy serves as supplemental coverage to the Package Policy, extending the retained limit the insurer must supply if covered damages exceed the underlying policy's limit. Accordingly, "in the event of any difference between the exclusions, restrictions, limiting terms, or conditions in this [Umbrella] Policy and [such terms] in the [underlying Package Policy] . . . the more restrictive provision shall apply—as per the "Underlying Insurance Coverage Limitation." Ex. 2, ECF No. 12 at 7. Accordingly, the aforementioned exclusions contained in the Package Policy may dictate coverage under both policies. *Id.*

    b. **The Underlying Action**

In the early stages of the Coronavirus pandemic, Chester County had contracted with Advaite, Inc. for the manufacturing and delivery of RapCov COVID-19 Rapid Test Antibody Kits. Ex. A, ECF No. 1 ¶¶ 13-15. Chester County also contracted with Plaintiff to provide laboratory services, including administering, reading, and processing these Covid tests for the residents of the county. Ex. A, ECF No. 1 ¶ 8. To be eligible for such a contract, a laboratory must have been certified as a High Complexity Clinical Laboratory Improvement Amendments ("CLIA") Laboratory, which Plaintiff was. Ex. A, ECF No. 1 ¶¶ 2, 16.

During discovery in a related state lawsuit with Chester County, Advaite deposed Lisa Jackson, Plaintiff's Managing Partner and Corporate Designee, who admitted that 1) Plaintiff did not follow the RapCov test kits' instructions when administering the tests; 2) Plaintiff's internal investigation into false positives revealed that there were no issues with the tests, instead that the supposed false positives were the result of improper use and reading of the tests by Plaintiff and County employees; 3) Plaintiff changed the results of the purported false positives without notifying patients; and 4) despite knowing that the RapCov test kits were not at fault for any

3

discrepancy, Plaintiff sent out over 19,000 letters to Chester County residents on October 1, 2020, informing them that the test kits were unreliable. Ex. A, ECF No. 1, at ¶ 9.

It was after learning the above facts that Advaite filed a complaint against Plaintiff seeking relief on four counts: I) breach of contract, II) tortious interference, III) negligence, and IV) commercial disparagement and trade libel. *Id*. at ¶ 3. Plaintiff has waived its right to argue coverage based on Counts I or II of the Advaite Complaint, but further detail is required as to the remaining counts. ECF No. 22, at 18.

Specifically, Count III alleges:

> 64. Defendant LVG had a duty to perform laboratory services accurately and properly. LVG breached this duty when it ignored Advaite's IFU and its own validation study.
> 65. Further, Defendant LVG breached its duty when it failed to inform individuals who had been administered the RapCov test when their test results were changed, instead falsely informing them four months later that there was a defect in the RapCov test kits.
> 66. Defendant LVG's breaches of duty damaged Plaintiff's reputation and its future business prospects.

Ex. A, ECF No. 1 ¶¶ 64-66. And Count IV alleges:

> 69. Defendant LVG misinformed thousands of individuals who had been administered the RapCov test that the RapCov test kits had a defect despite its Corporate Designee's admission under oath at her deposition that there were no issues with the RapCov test kits.
> 70. This misinformation was sufficiently disparaging and libelous, and LVG's conduct sufficiently wrongful, wanton, egregious, and or malicious, to warrant the award of compensatory damages to Plaintiff and the imposition of punitive damages against LVG.

Ex. A, ECF No. 1 ¶¶ 69, 70. This court must, therefore, determine whether Defendant has a duty to defend and indemnify Plaintiff based on Counts III and IV of the underlying Advaite complaint.

### III. LEGAL STANDARD

According to Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c). The court analyzes a motion for judgment on the pleadings in the same manner as one for failure to state a claim under Rule 12(b)(6). *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Accordingly, the court may not grant a motion for judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law, . . . view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991) (quoting *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

In deciding a motion for judgment on the pleadings, "a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## IV.   DISCUSSION

"The question of whether a claim against an insured is potentially covered [and the insurer owes a duty to defend] is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). "An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Id*. The Court must first determine the "'scope of the policy's coverage'" before "'examin[ing] the complaint in the underlying action to ascertain if . . . [it] avers facts that would support a recovery covered by the

5

policy,'" thereby triggering coverage. *Minn. Lawyers Mut. Ins. v. Mazullo*, No. 11-1470, 2012 WL 2343308, at *4 (E.D. Pa. June 20, 2012) (quoting *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).

The insured bears the burden to establish that the complaint is within the policy coverage, at which time the burden would shift to the insurer to establish that an exclusion applies. *Erie Ins. Group v. Catania*, 95 A.3d 320, 322 (Pa. Super. Ct. 2014). "Policy exclusions are strictly construed against the insurer." *CGU Ins. v. Tyson Assoc.*, 140 F.Supp.2d 415, 419 (E.D. Pa. 2001) (citing *Selko v. Home Ins.*, 139 F.3d 146 (3d Cir. 1998).

In construing the insurance policy, the court must adhere to the Pennsylvania canons of policy interpretation. *See Vitamin Energy, LLC v. Evanston Ins.*, 22 F.4th 386, 392, 397 n.7 (3d Cir. 2022). When interpreting an insurance policy, "[the language] must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). The goal is "to effectuate the intent of the parties as manifested by the language of the specific policy." *Id.*

The duty to defend is broader than the duty to indemnify, and they are separate and distinct obligations. *Am. & Foreign Ins.*, 2 A.3d at 540 (citing *Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 n.7 (duty to defend is broader); *Erie Ins. Exch. v. Transamerica Ins.*, 533 A.2d 1363, 1368 (Pa. 1987) (duties are separate and distinct)). Because the duty to defend is broader, where there is no duty to defend, there can be no duty to indemnify. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005) ("there is no duty to indemnify if there is no duty to defend.").

Plaintiff here has alleged that the duties to defend and indemnify are both within the scope of the insurance policy and triggered by the facts in the complaint brought against it. The duty to defend is triggered where at least one claim in a complaint against an insured alleges an injury that is actually or potentially covered under the policy on its face. *Am. & Foreign Ins.*, 2 A.3d at 540 (citing *Erie Ins. Exch.*, 533 A.2d at 1368). The duty to indemnify, however, is "more limited because it arises only if it is established that the insured's damages are actually covered by the terms of the policy." *Allstate Ins. v. Drumheller*, 185 Fed. App'x 152, 154 n.2 (3d Cir. 2006). Where a complaint raises a duty to defend, "the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Traveler's Ins.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Ins. Exch.*, 533 A.2d at 1368). "Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." *Am. & Foreign Ins.*, 2 A.3d at 541. The duty to defend is also "not limited to meritorious actions; it even extends to allegations that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage." *Am. & Foreign Ins.*, 2 A.3d at 541 (quoting *Erie Ins. Exch. v. Transamerica Ins.*, 533 A.2d 1363, 1368 (Pa. 1987)).

a. **Count III of the underlying complaint does not allege negligent trade libel.**

Plaintiff, having conceded there is no coverage on Counts I and II, frames Counts III and IV as "set[ting] forth [Advaite's] contentions of commercial disparagement in two separate counts. . . ." ECF No. 22, at 5; *see* ECF No. 22, at 16, 19. Plaintiff uses this creative framing to avoid both the professional services exclusion barring coverage for Count III, and the knowing publication exclusion barring coverage for Count IV.

With further discussion to follow on each exclusion, Plaintiff attempts to avoid the professional services exclusion applying to Count III by ignoring that the negligence alleged, in reality, seeks damages for Plaintiff's breach of its duty to perform laboratory services by failing to accurately report test results or the changes thereof, not for sending the letters informing Chester County residents that the test kits were unreliable:

> 64. Defendant LVG had a duty to perform laboratory services accurately and properly. LVG breached this duty when it ignored Advaite's [instructions] and its own validation study.
>
> 65. Further, Defendant LVG breached its duty when it failed to inform individuals who had been administered the RapCov test when their results were changed, instead falsely informing them four months later that there was a defect in the RapCov test kits.

Ex. A, ECF No. 1, at ¶¶ 64, 65. Although the complaint mentions that Plaintiff later sent the letters, this is clearly not the breach of duty Advaite relies on to assert its negligence claim. As Defendant points out, because Plaintiff misconstrues Count III to be negligent trade libel, it fails to carry its burden to establish that the actual negligence alleged is covered under the policy. ECF No. 24, at 10, 11. Plaintiff only asserts that Count III is covered based on the provision covering slander, saying, "allegations of liable[sic] and disparagement as set forth in the Underlying Complaint, specifically with respect to Count III and IV, fall squarely within coverage under the Policies." ECF No. 22, at 15.

This misconstruction would also avoid the knowing publication exclusion barring coverage on Count IV based on the rule that "potential" for coverage is what dictates the duty to defend. Plaintiff contends:

> Even where claims of negligence are not specifically set forth, as they are here, a duty to defend will [sic] be removed where the conduct alleged in the underlying complaint could have been due to negligence.

8

ECF No. 22 at 19. Therefore, Plaintiff asserts, the knowing publication exclusion cannot discharge the duty to defend because there would remain potential for a determination based on negligence once facts had been found. *Id.* The Court is not persuaded by Plaintiff's framing of the Advaite complaint.

Although it is true that the damages Advaite claims are to its reputation and business prospects, this alone does not make Count III a claim for negligent trade libel. On the contrary, the conduct which is the basis of the breach of contract allegation in Count III is not the alleged sending of libelous letters, but the failed performance of laboratory services, including failing to follow the instructions for the administration of the tests, inaccurately reporting initial results, and failing to inform patients of changed results. Ex. A, ECF No. 1 at ¶¶ 9, 64, 65, 66.

Furthermore, although the underlying complaint must be liberally construed in favor of coverage, it is the factual allegations contained within the complaint that determine coverage, not the cause of action pled. *Am. & Foreign Ins.*, 2 A.3d at 541. The Advaite complaint repeatedly aleges that Plaintiff was aware that the claims it made were false at the time that it made them, relying chiefly on the deposition from Plaintiff's own corporate designee who clearly and unequivocally admits to such knowledge. Ex. A, ECF No. 1 ¶¶ 9, 19, 43, 52, 53, 54, 69. The mere mention of the publication of false material under the Count III Negligence heading does not go so far as to assert any mental state other than knowledge for trade libel claim in Count IV.

*Mutual Ben. Ins. v. Haver* provides controlling guidance on this issue. 725 A.2d 743 (Pa. 1999). In *Haver*, a pharmacist was sued for misconduct and his insurer declined to defend, asserting an exclusion for knowing misconduct. *Id.* The Pennsylvania Supreme Court applied the exclusion despite the complaint alleging only negligence, pointing to factual allegations that indicated knowing misconduct. *Id.* Just as in *Haver*, where factual allegations pertaining to the

9

plaintiff's knowledge triggered the application of the knowing misconduct exclusion, regardless of the cause of action pled, here too, factual allegations pertaining to Plaintiff's knowledge here justify the application of the knowing publication exclusion, regardless of the cause of action pled. "[T]o allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." *Haver*, 725 A.2d at 745; *see also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr*, *Inc.*, 2 A.3d 526, 541 (Pa. 2010).

This Court declines to consider Count III a claim for negligent trade libel.

### b. Even if Plaintiff had established coverage based on Count III, Defendant has met its burden of establishing that the professional services exclusion applies to preclude any such coverage.

Because Plaintiff provides no alternative argument for coverage based on Count III, it has not met its burden to establish coverage on this count based only on its misconstruction of the count as negligent trade libel. *See* ECF No. 22, 23; ECF No. 24, at 10-12; ECF No. 22, at 15. Even if Plaintiff had established coverage, however, this court finds that Defendant has met its burden of establishing that the professional services exclusion would bar coverage on this count regardless.

The professional services exclusion bars coverage for injuries "caused by the rendering or failure to render any professional services." Ex. 1, ECF No. 12 at 122. The Advaite complaint relies on a CMS audit that found Plaintiff was "responsible for a multitude of deficiencies in how it administered the tests" which was a part of its laboratory services. Ex. A, ECF No. 1, at ¶ 46. These practical deficiencies, by Plaintiff's own agent's admission, affected every patient's results. Ex. A, ECF No. 1, at ¶ 48. Advaite's harm under Count III was allegedly caused by the rendering

10

and reporting of those inaccurate results. Therefore, so long as these acts are considered professional services, the professional services exclusion applies to preclude coverage under Count III.

The policy defines professional services to include "medical . . . or nursing services treatment, advice, or instruction" and "any health or therapeutic service, treatment, advice or instruction," and further states:

> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by the insured. If the 'occurrence' which caused the 'bodily injury' or 'property damage,' or the offense which caused the 'personal and advertising injury,' involved the rendering or failure to render professional services.

Ex. 1, ECF 12, at 122. Where no such definition is included in the policy, courts in Pennsylvania and the Third Circuit have interpreted "professional services" in the context of an insurance contract to mean "services rendered by a recognized professional in the field[] of medicine, law, accounting, or architecture. Such professionals are distinguished by specialized training or education, state licenses, and legal liability for professional negligence or malpractice." *CDL, Inc. v. Certain Underwriters at Lloyd's of London*, Nos. 2014 WL 10914098 at *5 (Pa. Super. 2014) (internal quotations omitted); *see Visiting Nurses Ass'n v. St. Paul Fire and Ins.*, 65 F.3d 1097, 1101 (3d Cir. 1995) (quoting *Harad v. Aetna Cas. And Sur. Co.*, 839 F.2d 979, 985 (3d Cir. 1988)) ("a professional service must be such as exacts the use or application of special learning or attainments of some kind . . . . A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill." (internal quotations omitted)).

Based on both the definition of professional services provided in Plaintiff's insurance policy, and that which has been applied by the Third Circuit, this Court finds that proper

11

administration and reporting of test results are considered professional services in this context. Plaintiff was required to have CLIA certification from the federal government to administer and report the results of these tests. Ex. A, ECF No. 1, at ¶ 16. Plaintiff entered into a contract with the County for the purpose of performing these medical services which require specialized training as well as a license from the federal government. Ex. A, ECF No. 1, at ¶ 17. Plaintiff's acts in administering the tests, initially reporting their results, and later reporting changed results as alleged in the complaint are part of the laboratory's professional services. As are the specific deficiencies identified by the CMS audit that are an integral part of providing such professional services, such as ensuring that testing personnel received appropriate training, establishing a quality control and assurance programs, and monitoring and evaluating the overall quality of the analytic systems and correcting problems. *Sentinel Ins. v. Monarch Spa Inc.*, 105 F. Supp. 3d 464, 473 (E.D. Pa. 2015) (citing *Am. Rehab. and Physical Therapy, Inc. v. American Motorists Ins.*, 829 A.2d 1173, 1177 (Pa. Super. Ct. 2003)) (finding that those services which are an "integral part of providing such professional services" are also considered professional services "properly excluded under the insurance contract"); Ex. A, ECF No.1, at ¶ 46. When faced with a similar determination, the Eleventh Circuit came to the same conclusion, even where the policy's professional services definition did not explicitly reference medical care, saying:

> While transposing the test results may be a clerical task, if the test results are transposed improperly, the testing process fails. Clearly, transposing test results and figures is an intricate part of testing plasma for hepatitis, which is a professional service.

*Alpha Therapeutic Corp. v. St. Paul Fire and Marine Ins.*, 890 F.2d 368, 371 (11th Cir. 1989). Therefore, because the complaint alleges that Plaintiff rendered or failed to render these professional services, the exclusion applies and bars coverage for Count III under the insurance policy. Accordingly, there is no duty to defend or indemnify based on this Count.

### c. Defendant has met its burden of establishing that the knowing publication exclusion applies to discharge the duty to defend as it pertains to Count IV.

Assuming the allegations in Count IV of the Advaite complaint establish a personal and advertising injury caused by the letters Plaintiff sent to Chester County residents about the RapCov test kits, Plaintiff next argues that the policy's exclusion for knowing publications of false material does not apply to bar coverage for Count IV. ECF No. 22, at 17-21. It suggests that an allegation of slanderous publication "almost always involve[s] assertions that such conduct was intentional," and in the face of this apparent ambiguity, "such exclusion certainly cannot be used to remove and[sic] insurer's duty to defend." ECF No. 22, at 21. Plaintiff proposes instead that the exclusion must, then, only apply to the duty to indemnify, not the duty to defend because the exclusion requires "a determination as to the intent of the act . . . in the Underlying Action," but the duty to defend is triggered merely by the possibility that the allegations implicate coverage. *Id.*

Where the language is "plain and unambiguous, a court is bound by that language." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). If a term is ambiguous, "the policy is to be construed in favor of the insured . . . as the insurer drafts the policy . . . ." *Id.* (quoting *401 Fourth St. Inc. v. Investors Ins. Grp.,* 879 A.2d 166, 171 (Pa. 2005)). Terms are ambiguous if they are "reasonably susceptible to more than one construction and meaning." *Id*. Further, "policy terms should be read to avoid ambiguities . . . [and] a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. And Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988). Accordingly, "[terms] are not ambiguous simply because parties do not agree on the construction of the provision." *Brian Handel D.M.D., P.C. v. Allstate Ins.*, 499 F.

Supp. 3d 95, 99 (E. D. Pa. 2020) (citing *Weisman v. Green Tree Ins.*, 670 A.2d 160, 161 (Pa. Super. Ct. 1996)).

Plaintiff first relies on *CGU v. Tyson Assoc.*, finding a duty to defend despite an intentional act exclusion where the policy provided coverage for a series of intentional torts, saying that because such torts will almost always allege intent, "at the very least, there is an ambiguity within the policy language which must be interpreted against [the insurer]." 140 F. Supp. 2d 415, 423 (E.D. Pa. 2001). The exclusion in *CGU* barred coverage for, "[p]ersonal injury ... [a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured" and the complaint in the underlying action alleged wrongful eviction, which was one of the enumerated torts covered under the policy. *Id.* at 421 (internal quotations omitted). The coverage and exclusion provisions were in contradiction with each other because "suits alleging injuries arising from these intentional torts . . . would almost always allege [the results] were intended by the defendant," therefore, protection for these torts would essentially be nullified if the Court found the exclusion removed the insurance company's duty to defend suits alleging injuries from them. *Id.* at 423. Plaintiff seems to contend that the holding in the *CGU* case supports the sweeping proposition that "intentional acts exclusions are *only* relevant to the duty to indemnify, not the duty to defend." ECF No. 22, at 21 (emphasis added). However, as Defendants point out, *CGU* is distinguishable from the present case because it involved policy coverage for a different tort, a different type of policy exclusion, and a pre-determination as to the intent of the underlying act because the state court actions concluded that "[t]he Defendants ha[d] not willfully violated a penal statute or ordinance, nor [were they] liable for any torts." 140 F. Supp. 2d at 421. Moreover, Plaintiff plucks from its context a fragment of analysis from *CGU* responding to a public policy argument from the insurance company. That Court said, "Likewise, in *Home*

*Insurance Co.,* the court found that the insurer's public policy argument against insuring intentional acts was only relevant towards its duty to indemnify and not its duty to defend." *Id*. at 422 (referencing *Home Ins. Co. v. Perlberger,* 900 F.Supp. 768, 771 (E.D. Pa. 1995)). Plaintiff's reliance on this passage for its conclusion that "it is well established that intentional act exclusions by an insurer are 'only relevant towards its duty to indemnity and not its duty to defend'" is overstated and unsupported by Plaintiff's briefing. ECF No. 22, at 21.

Considering Plaintiff's interpretation more generally, it does not seem reasonable for this Court to find that the knowing publication exclusion here applies only to the duty to indemnify. Plaintiff has not identified anywhere in the policy where the intention is manifested that coverage would apply differently at the duty to defend stage than it does at the duty to indemnify stage. *See* ECF No. 22, 23. Because the terms of the policy clearly and unambiguously state that knowing publication of false material is excluded from coverage, the court is bound by that language, and the fact that the policy does cover claims of trade libel does not create an ambiguity. Although the duty to defend could be triggered in the case of other suits where there is a potential finding of negligence, the factual allegations in this case revolve solely around knowing and intentional conduct from Plaintiff.

Despite this, Plaintiff asserts that because facts have not yet been established regarding its intent, it would be inappropriate to allow an alleged mental state to discharge the duty to defend. This would seem to run against the long-standing and oft-repeated rule that the duty to defend is determined based only on the four corners of the complaint in the underlying litigation and the four corners of the insurance policy. *Am. & Foreign Ins. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d

888, 896 (Pa. 2006). Under this rule, further fact finding and even a final judgment would have no place in the duty to defend analysis.

In making this claim, Plaintiff relies on *Westport*, a case from the Middle District of Pennsylvania rejecting the application of an intentional act exclusion, finding that because the conduct could have been negligent and all the facts had not yet been developed, the insurer owed a duty to defend. 513 F. Supp. 2d 157 (M. D. Pa. 2007). That case is substantially similar in application to *Transportation Ins. v. Pennsylvania Manufacturer's Ass'n Ins.,* a case from this district which applied an exclusion identical to the one at issue, and similarly held that there was potential for coverage because the factual allegations of the complaint, when taken as true, left room for varying conclusions as to mental state, and the factual record had not yet been established. 641 F. Supp. 2d 406 (E.D. Pa. 2008) *rev'd on other grounds* 346 F. App'x 862 (3d Cir. 2009). As that Court explained:

> The salient point here, however, is that at the stage of the litigation when [insurer] denied [insured] coverage-the very beginning, prior to conducting any factual discovery whatsoever into the Pohl Complaint-neither of the knowledge exclusions was applicable because such facts tending to support either conclusion had not yet been developed.

*Id.* at 416. The factual allegations in the present matter are not so vague and undefined. In its complaint, Advaite repeatedly and unequivocally alleges that Plaintiff had knowledge that its statements were false. Ex. A, ECF No. 1, at ¶¶ 9, 19, 43, 52, 53, 54, 69. These allegations are not without adornment; indeed, they rely on Plaintiff's own corporate designee's admissions under oath that Plaintiff knew that the test kits were not faulty and still sent out the disparaging letters despite this knowledge. Ex. A, ECF No. 1, at ¶¶ 19, 43, 52. Plaintiff cannot claim in the present court proceeding that it lacked the knowledge which it has admitted to having in another court proceeding.

Where in *Transportation Ins.*, the insurance company denied coverage without any facts supporting knowledge being discovered, in the present case, Defendant denied coverage with the litany of facts in the complaint, including and especially those facts admitted to under oath by Plaintiff's own corporate designee. Ex. A, ECF No. 1. Even a liberal construction of this complaint in favor of coverage cannot go so far as to ignore the extensive facts alleged.

There is no potential for coverage, and therefore, no duty to defend or indemnify based on Count IV of the Advaite complaint.

## V.     CONCLUSION

Despite Plaintiff's framing of Count III, the Advaite complaint does not assert a claim of negligent trade libel, and further, Plaintiff has not met its burden to establish coverage based on Count III. Even if it had, Defendant has met its burden in showing that the professional services exclusion applies to bar coverage for Count III. The factual allegations, not the cause of action pled, determine the duty to defend. Therefore, the Advaite complaint's consistent and unequivocal allegations that Plaintiff knew the content of the letters it sent to Chester County residents were false require an application of the knowing publication exclusion to bar coverage for Count IV. Thus, there is no potential for coverage and therefore, no duty to defend based on Counts III or IV of the Advaite complaint. Accordingly, there is no duty to indemnify where there is no duty to defend. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's is denied. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge
